## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICKY S. JOHNSON, et al.,

   Plaintiffs,

v.            No.  05-2093-JWL-DJW

KRAFT FOODS
NORTH AMERICA, INC. et al.,

   Defendants.

## MEMORANDUM AND ORDER

Pending before the Court is a Motion to Compel additional discovery responses (doc. 116) filed by Plaintiffs Bradshaw, Adams and Raines ("Plaintiffs").  More specifically, Plaintiffs request the Court:

- overrule Defendant's general objections to the discovery requests; and

- overrule Defendants' objections that certain discovery requests are

  - overly broad

    - in temporal scope
    - in departmental/organizational scope; and
    - in geographic scope;

  - duplicative of requests previously propounded by Plaintiff Johnson;

  - vague and ambiguous; and

  - not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

As set forth more fully below, Plaintiffs' Motion will be granted in part and denied in part.

A.     **General Objections**

Defendants' responses to Plaintiff's First Request for Production of Documents include the

following "general objections":

- A general objection to Plaintiffs' definitions and instructions to the extent that they

    - request production of electronic documents;

    - are inconsistent with, and exceed the scope of, discovery permitted by the Federal Rules of Civil Procedure (the "Rules");

    - are vague and ambiguous; and

    - are overly broad with regard to the term "Kraft Customer Development Organization (Sales)"

- A general objection to the requests to the extent they seek information protected by privilege; and

- A general objection to the requests to the extent they use terms such as "every," "each," "all," "pertaining to," "concerning" or "related to."

In a previous Memorandum and Order issued in this case, the Court reiterated its disapproval

of the practice of asserting a general objection "to the extent" such an objection may apply to

particular discovery request.[1] The Court stated it would construe these general objections to be

"hypothetical or contingent possibilities" in those instances where the objecting party makes "'no

meaningful effort to show the application of any such theoretical objection to any request for

discovery.'"[2]  In those cases, the Court stated it would deem such general objections waived and

---

[1]June 16, 2006 Memorandum and Order at p. 2 (doc. 91) (citing *Sonnino v. University of Kansas,* 221 F.R.D. 661, 666-67 (D. Kan. 2004) (citing *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, No. Civ. A. 97-2391-GTV, 1998 WL 231135, at *1 (D. Kan. May 6, 1998)); *see also Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 660-61 (D. Kan. 2004)).

[2]*Id.* (citing *Starlight*, 181 F.R.D. at 497; *Cotracom*, 1998 WL 231135, at *1)).

2

would decline to consider them as objections at all.[3]

Here, the Court finds the general objections are lodged – either directly or indirectly (through the definitions and instructions[4]) – to the extent that they are applicable to each of the discovery requests.  More specifically, Defendants made "no meaningful effort to show the application of [the general] objections to any request for discovery."  For these reasons, the Court deems Defendants' "general objections" waived and will order Defendants to respond to each request for production without consideration of their purported "general objections."

**B.**     **Defendants' Objections that the Requests are Overly Broad in Scope**

    **1.**     **Overly Broad in Temporal Scope**

In many of the requests at issue, Plaintiffs seek documents from January 1, 1999 to  present.  Defendants object to each of these requests on the basis of the time frame and, as a result, limit their production to the five-year time period from April 7, 2001 to April 7, 2006.  In support of this restricted time period, Defendants argue documents from outside the five-year time period immediately preceding April 7, 2006 – the date Plaintiffs filed the Amended Complaint – are not relevant.  The Court disagrees.

---

[3]*Id.* (citing *Cotracom*, 1998 WL 231135, at *1 (holding that a party had not justified the application of any "privilege, protection, or immunity" and therefore waived whatever objection it might have asserted where the party asserted a general objection "to the extent" the interrogatories sought anything protected by any "applicable privilege, protection, or immunity"); *Starlight*, 181 F.R.D. at 497 (declining to find that party had asserted a valid objection of work product or attorney-client privilege where party made a general objection "to all interrogatories to the extent the information which is subject to the attorney-client privilege or which is . . . Defendants' work product is sought.")).

[4]That some of the general objections are directed to Plaintiffs' preliminary instructions and definitions does not make them any less hypothetical or contingent.

The Amended Complaint asserts claims pursuant to (a) Title VII; (b) 42 U.S.C. § 1981; and (c) the Kansas Act Against Discrimination. In a deferral state such as Kansas, a plaintiff must file administrative charges within 300 days after the date of the last discriminatory act alleged.[5] In this case, the EEOC charge was filed in January 2006. Moreover, the statute of limitations under section 1981 is two or four years, depending on the individual claim.[6] All told, and without taking into account the allegations of a pattern and practice of discriminatory conduct prior to the date that the "last discriminatory act" was alleged to have occurred, the potential liability period here extends from April 2002 to present. To that end, Plaintiffs seek documents for the potential liability period and the two years and three months time frame prior to the date the last discriminatory act was alleged to have happened.

"With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable

---

[5]*Waddy v. Unified Gov't of Wyandotte County*, No. 01-2178-CM, 2003 WL 21479208, *2 (D. Kan. June 19, 2003) (citing several cases); *Webb v. Owens-Corning Fiberglas Corp.*, No. 96-2100-JWL, 1997 WL 292125, *2 (D. Kan. May 2, 1997).

[6]*Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *Cross v. Home Depot*, 390 F.3d 1283 (10th Cir. 2004) (There is some discrepancy as to whether failure-to-promote claims are subject to the two or four year statute of limitations).

number of years both prior to and following such period."[7] The task of the trial court is to balance the relevance of the information against the burden of production on Defendants.

Here, the Court finds information from the two-years and three-months prior to the April 2002 liability period may be relevant to demonstrate the pattern and practice of discriminatory conduct alleged by Plaintiffs. Moreover, Defendants have provided no evidence that production of documents for this twenty-seven month period would impose any burden on Defendants. For these reasons, the Court overrules Defendants' objection to temporal scope and will order Defendants to supplement their responses accordingly.

### 2. Overly Broad in Departmental/Organizational Scope

In many of the requests, Plaintiffs seek documents relating to the "Kraft Sales Organization." Defendants object to each of these requests on grounds that the departmental/organizational scope of these requests is overly broad. More specifically, Defendants maintain the Kraft Sales Organization is comprised of not just sales representatives, but sales managers, sales professionals and/or sales support staff as well. Defendants argue a request for documents related to all of these positions in the sales department is overly broad, because only the sales representatives are similarly-situated to Plaintiffs.

---

[7]*Owens v. Sprint/United Management Co.*, 221 F.R.D. 649, 565 (D. Kan. 2004) (setting temporal scope at two and a half years prior to discriminatory conduct); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212 (D. Kan. 2002); *E.E.O.C. v. Kansas City Southern Ry.*, 195 F.R.D. 678, 679 (D. Kan. 2000); *Long v. Landvest Corp.*, No. 04-2025-CM, 2006 WL 897612, *7-8 (D. Kan. Mar. 31, 2006) (ten-year and five-year temporal scope for discovery requests was overbroad; three years was a reasonable scope, in light of the three-year statute of limitations); *Stoldt v. Centurion Indus., Inc.*, No. 03-2634-CM, 2005 WL 375667, *2 (D. Kan. Feb. 3, 2005) (noting three-year temporal scope has been upheld in discrimination cases as reasonable and not overly broad); *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364, *2 (D. Kan. Jan. 31, 2002) (three year temporal scope not overly broad).

In response to Defendants' objection, Plaintiffs narrowed the scope of each of their requests to include only sales representatives and region managers in the Kraft Sales Organization. Defendants object to this more limited definition of Kraft Sales Organization as well, however, on grounds that no Plaintiffs has ever held the position of region manager, thus individuals in those positions are not similarly situated to Plaintiffs. The Court disagrees.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[8]   Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[9] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[10]

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption

---

[8]Fed. R. Civ. P. 26(b)(1).

[9]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted).

[10]*Id.*

in favor of broad disclosure.[11] Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[12]

The Court finds the scope of those requests seeking documents regarding all sales representatives and region managers are not overly broad on their face.  Plaintiffs' Amended Complaint asserts that, as sales representatives, there have been numerous instances of failure to promote from these sales positions to manager positions, including region manager.  Moreover, there has been no assertion, or supporting facts, to demonstrate that discovery of documents related to region managers would impose a burden on Defendants.  Finally, Defendants' assertion that the title of "region manager" no longer exists is immaterial; Defendants should respond for the position regardless of its new title. For these reasons, the Court will overrule Defendants' objections to the organizational scope of the requests, as subsequently revised and limited by Plaintiffs.

### 3.      Overly Broad in Geographic Scope

In many of the requests, Plaintiffs seek documents for the "Kansas City Region." Defendants object to the geographic scope of each of these requests on grounds they are overly broad.  More specifically, Defendants maintain the Kansas City Region extends beyond the Kansas City metropolitan area to numerous states in which Plaintiffs never worked and that some of the states comprising this region have changed over the past five years.

In determining the geographic scope of discovery for non-class action complaints, the "most natural focus is upon the source of the complained discrimination – the employing unit or work

---

[11]*Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (citation omitted).

[12]*Owens*, 221 F.R.D. at 652 (citation omitted).

unit."[13]   That focus may be expanded, however, if the plaintiff can show the requested information is "particularly cogent" to the matter.[14]   Information which may establish a pattern of discrimination is discoverable even when the action seeks only individual relief.[15]   When a motive or intent of a defendant employer is at issue, information concerning its conduct towards employees other than the plaintiff is relevant.[16]

Plaintiffs allege in their Amended Complaint that individuals in the higher-ranks of Defendant's corporate structure perpetuated the alleged discrimination.[17] Plaintiffs also allege they all worked under the same Regional Vice-President.[18] Moreover, the various counts contained in Plaintiffs' Amended Complaint allege Defendant perpetuated the discrimination from the top down. Based on these allegations, the Court finds the motives behind employment decisions made by managers at the regional level are relevant. Since the wrongdoing is alleged to have occurred – at least in some part – at a regional level within Defendant's  organizational structure, the Court finds defining the geographic scope of the requests as the Kansas City region is reasonable. Thus, Defendants' objections to geographic scope will be overruled.

## C.    Defendants' Objections that the Requests are Duplicative

Defendants object to numerous requests propounded by Plaintiffs Raines, Bradshaw and

---

[13]*Owens*, 221 F.R.D. at 653 (citation omitted).

[14]*Id.* at 654 (citation omitted).

[15]*Id.* at 653 (citation omitted).

[16]*Id.* (citing *Spulak v. KMart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)).

[17]See, e.g., Amended Complaint (doc. 75), ¶¶ 11-14 (suggesting Plaintiffs, as well as many others, worked under the same high-level regional representatives).

[18]Id. at ¶ 15.

Adams on the ground they are duplicative of requests previously made by Plaintiff Johnson.  For the following reasons, this objection will be overruled.

Plaintiff Johnson propounded written discovery to Defendants. While Defendants objected to several of the requests, the Court ultimately denied a subsequent Motion to Compel filed by Plaintiff Johnson because the motion failed to identify which of Defendants' discovery responses were purportedly deficient and, once identified, how they were deficient.[19]  Thereafter, Plaintiffs Raines, Bradshaw, and Adams were added to Plaintiff Johnson's Complaint by amendment on April 7, 2006.[20]  A new Scheduling Order was put in place on May 25, 2006.  Given the addition of three new Plaintiffs, the new Scheduling Order reset all the existing deadlines in the case, including the deadline for initial disclosures, ADR, expert disclosures, motions for protective orders, motions to dismiss, discovery, etc.  In addition, the Court revised its earlier order by increasing the maximum number of depositions to be taken by each party from ten to twenty.

On June 19, 2006 – after the new Scheduling Order was in place – Plaintiffs Raines, Bradshaw and Adams served written discovery requests on Defendants.  Plaintiffs acknowledge that (1) some of these requests previously had been propounded by Plaintiff Johnson but never answered by Defendants; and (2) Plaintiff Johnson failed to adequately present the issue for resolution by the Court.  With that said, Plaintiffs argue the requests are not duplicative because Defendants never responded to them.  Plaintiffs further argue they have not waived their right to challenge the objections lodged and compel responses to the previously propounded requests because they were not parties to the lawsuit at the time the original discovery was served and when the inadequate

---

[19]June 7, 2006 Memorandum and Order (doc. 89) at pp. 2-3.

[20]Amended Complaint (doc. 75).

motion to compel filed.

The Court is persuaded by Plaintiffs' arguments here. Perhaps the Court would reach a different conclusion if Defendants originally had responded to the requests and the Court had considered the adequacy of the responses and/or the underlying objections lodged by Defendants. But, given Defendant never responded to the original discovery requests, the Court never considered the adequacy of Defendants' responses and/or underlying objections, and the three new Plaintiffs were not part of this lawsuit when Plaintiff Johnson's requests were at issue, the Court finds Plaintiffs Raines, Bradshaw and Adams are not precluded from propounding these discovery requests and/or moving to compel responses.[21] Thus, the Court will overrule Defendants' objections based on duplicity.

**D.     Defendants' Objections that the Requests are Vague and Ambiguous**

In their discovery responses, Defendants object to the following terms as vague or ambiguous: "electronic databases," "personnel related data," "database," "methods and techniques," "record layout," "coded fields," and "data dictionaries." In their golden rule letter, Plaintiffs provide the following definitions to Defendants to resolve any ambiguity:

> **Electronic Database** - An organized body of related information or collection of data arranged for ease and speed of search and retrieval, kept in electronic form (e.g. kept on a computer server, diskette, tape, etc.);
>
> **Personnel-Related Data** - Information collected about a company's employees (e.g., salary, race, gender, promotions, etc.);
>
> **Database** - an organized body of related information or collection of data arranged for ease and speed of search and retrieval;

---

[21]With that said, the Court will not require Defendants to produce documents and information already produced to Plaintiff Johnson in this lawsuit, as such a production would be duplicative.

**Methods and Techniques** - a means or manner of procedure, especially a regular and systematic way of accomplishing something;

**Record Layout** - an arrangement or a plan for presenting or publishing information, with particular emphasis on schematic arrangement of the information;

**Coded Fields** - a systematically arranged and comprehensive collection of columns of information that is organized under particular headings;

**Data Dictionaries** - a data structure that stores meta-data, i.e. data about data. Most generally it is a set of data descriptions that can be shared by several applications. Usually, it means a table in a database that stores the names, field types, length, and other characteristics of the fields in the database tables. An active data dictionary is automatically updated as changes occur in the database. A passive data dictionary must be manually updated.

Notwithstanding these definitions, Defendants continue to object to the referenced words and phrases as vague and ambiguous. In support of their objection, Defendants state the attorneys who are conferring regarding the adequacy of discovery responses are not the same attorneys who are conferring about the scope of electronic discovery to be produced – in this lawsuit as a whole – pursuant to district guidelines.  Defendants argue that if they produce documents utilizing the definitions of electronic discovery terms provided by Plaintiffs in conjunction with the discovery requests at issue here, Defendants will then run the risk of inconsistent definitions of those same terms in the discovery process as a whole.

The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.[22] A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories."[23] In the case of specialized terms related to electronically stored information, the Court finds it

---

[22]*McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996)).

[23]*Id.*

appropriate, as the parties have done here, to attribute definitions consistent with the district guidelines regarding discovery of electronically stored information.

The district guidelines regarding discovery of electronically stored information were revised on October 17, 2006.[24]  To that end, the guidelines specifically address the duty of counsel

- to become knowledgeable about their client's information management system;

- to disclose electronically stored information;

- to notify opposing counsel that it will seek electronically stored information; and

- to meet and confer regarding the following issues related to discovery of electronically stored information:

  - Spoliation;

  - Scope of e-mail discovery and e-mail search protocol;

  - Whether responsive deleted information still exists, the extent to which restoration of deleted information is needed, and who will bear the costs of restoration;

  - Whether "embedded data" and "metadata" exist, whether it will be requested or should be produced, and how to handle determinations regarding privilege or protection of trial preparation materials;

  - Whether responsive back-up and archival data exists, the extent to which back-up and archival data is needed, and who will bear the cost of obtaining such data;

  - Format and media to be used in the production of electronically stored information; and

  - Whether any responsive electronically stored information is not reasonably accessible, i.e., information that is only accessible by incurring undue burdens or costs.

---

[24]See http://www.ksd.uscourts.gov/guidelines/electronicdiscoveryguidelines.pdf.

Although the district guidelines do not specifically provide definitions for the terms in dispute by the parties here, the guidelines *do* provide a valuable reference to the Sedona Conference® for definitions of terms used in the guidelines.[25]

Thus, Defendants have at their disposal definitions of the disputed terms provided by Plaintiffs, district guidelines that reference the Sedona Conference® comprehensive glossary of terms related to electronically stored information, and case law that directs parties to exercise reason and common sense in defining terms and phrases utilized in discovery requests.  For these reasons, the Court finds Defendants have failed to carry their burden to show that the terms and phrases used in Plaintiffs' discovery requests are vague or ambiguous.  Accordingly, Defendants' objections on these grounds will be overruled.[26]

## E.    Defendants' Objections that the Requests are Neither Relevant nor Reasonably Calculated to Lead to the Discovery of Admissible Evidence

Defendants object to Requests 1, 7-17, 19-32, 34-36, 38-40, and 42 on grounds that they are not relevant, not likely to lead to the discovery of admissible evidence, and/or are not reasonably particular as required by Fed. R. Civ. P. 34.  The Court will address these objections for each of the requests individually or in groups.

---

[25]District of Kansas Guidelines for Discovery of Electronically Stored Information at http://www.ksd.uscourts.gov/guidelines/electronicdiscoveryguidelines.pdf (citing Appendix A, The Sedona Principles: Best Practices, Recommendations and Principles for Addressing Electronic Document Discovery (The Sedona Conference® Working Group Series, July 2005 Version) at http://www.thesedonaconference.org/content/miscFiles/publications_html.)

[26]Counsel is reminded that district guidelines impose a duty to meet and confer early on in the case (at the Rule 26(f) conference) regarding "the format and media to be used in the production of electronically stored information." D.Kan. Guidelines for Discovery of Electronically Stored Information at 4(f), http://www.ksd.uscourts.gov/guidelines/electronicdiscoveryguidelines.pdf.

**Request 1**:  All documents describing or identifying any or all electronic databases maintained by Kraft during the relevant time period that contain personnel-related data concerning the Kraft Sales Organization in the Kansas City Region and the contents of each such database.

The Court finds this request is overly broad on its face.  Although documents responsive to this request may include data reflecting salary, promotions, race, disciplinary information, and other information relevant to Plaintiffs' claims of discrimination, the request is not sufficiently tailored to retrieve only the relevant information.  Unrelated documents that even fleetingly reference the personnel database would have to be produced in response to this request.  As noted by Defendants, documents responsive to this request could include, for example, non-relevant accounting invoices, maintenance records, and instructional manuals on software.

Despite the overly broad nature of Request 1 on its face, the Court is mindful of a party's duty under the federal rules to respond to the extent that discovery requests are not objectionable.[27] The Court will not, however, compel further response in those instances when inadequate guidance exists to determine the proper scope of a request.

Here, Request 1 appears non-objectionable to the extent it seeks the contents of electronic databases that contain personnel-related data (e.g., salary, race, gender, promotions, etc.) concerning the Kraft Sales Organization (sales representatives and managers only) in the Kansas City Region.[28] The request appears relevant to Plaintiffs' claims of disparate treatment based on race.  In fact,

---

[27] Fed. R. Civ. P. 34(b).

[28]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 666 (D. Kan.1999) (citing *Schartz v. Unified School Dist. No. 512*, No. 95-2491-EEO, 1996 WL 741384, at *1 (D. Kan. Dec.18, 1996) (addressing duty to answer interrogatories and respond to requests for production); *see, also, Mackey v. IBP, Inc.*, 167 F.R.D. 186, 198 (D. Kan. 1996) (addressing duty to answer interrogatory)).

except for objections to the organizational and temporal scope of these requests rejected by the

Court, *supra*, Defendants submit no argument to support a claim that this portion of Request 1 is

overly broad.  Thus, Defendants will be ordered to produce the contents of electronic databases that

contain personnel-related data (e.g., salary, race, gender, promotions, etc.) concerning the Kraft Sales

Organization in the Kansas City Region.

> **Request 7**: All documents, databases and files containing personnel information for
> all persons employed in the Kraft Sales Organization in the Kansas City region
> during the Relevant Time Period or containing information that pertains to such
> personnel including without limitation payroll master files, corporate personnel files,
> and summaries or excerpts thereof, which include information identifying employees,
> such as name, social security number or other identifying number, and such
> employee's race, hire date, initial job held, initial job assignment, initial job title and
> position, subsequent jobs held, subsequent job assignments, subsequent job titles and
> positions, initial pay, subsequent pay rates or adjustments, bonuses, total
> compensation, transfers, promotions, demotions, training evaluations, performance
> reviews and/or terminations.

Defendants contend this request is overly broad, and thus not relevant to the claims and

defenses asserted, because it requests "every single piece of paper with the names of any of the

employees in the multi-state sales organization, from support staff to professionals, since 1999."

Defendants go on to contend that the request "is almost unlimited with regard to the type of

documents or files that may contain responsive information."   The Court disagrees and finds the

request to be relevant on its face to Plaintiffs' claims of disparate treatment based on race.

When the discovery sought appears relevant, the party resisting the discovery has the burden

to establish the lack of relevance by demonstrating that the requested discovery (1) does not come

within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal

relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption

in favor of broad disclosure.[29] Here, Plaintiffs already have narrowed the definition of "Kraft Sales Organization" to include only sales representatives and sales managers.  With this limitation, Defendants have failed to submit argument or evidence to establish that Request 7 lacks relevance to Plaintiffs' claims.  Thus, Defendants' objection will be overruled.

> **Request 8**:  All documents showing the name, identity, location, size and sales volume of all customers, accounts, sales routes and/or sales territories serviced by the Kraft Sales Organization in the Kansas City region during the Relevant Time Period, and the name, identity and race of all Kraft employees assigned to each account, sales route and/or sales territory.  This includes all documents describing or reflecting all customer business teams in the Kansas City region.

> **Request 16**: All documents reflecting the names, identities and/or locations of all customers, accounts, sales routes and/or sales territories serviced by the Kraft Sales Organization in the Kansas City region during the Relevant Time Period

Defendants object to these requests on grounds that customer information is not relevant to the claims or defenses asserted in this lawsuit.  The Court disagrees.  Plaintiffs' performance is – at least in part – evaluated on customer sales. Thus, customer location, size and sales volume relates to job performance and, in turn, information relating to customers, accounts, and sales routes, and the employees who service those accounts and routes in the Kansas City region, is relevant to Plaintiffs' claims that Defendants treated Plaintiff differently in assigning customers, accounts and sales routes in the Kansas City region.

> **Request 9**:  All documents concerning or reflecting any procedures or criteria used by the Kraft Sales Organization during the Relevant Time Period to assign employees to customers, accounts, sales routes, sales territories, and/or customer business teams.

Defendant first objects to this request on grounds of relevancy. More specifically, Defendants state that "Plaintiffs provide no specific explanation of how this information is relevant; instead, they

---

[29]*Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (citation omitted).

make conclusory claims that such documentation is 'clearly relevant to Plaintiffs' claims of unequal treatment.'"

As a preliminary matter, the Court notes Defendants have ignored the burden shifting process used in establishing relevancy. Unless the request is overly broad on its face or relevancy is not readily apparent, Defendants – as the party resisting discovery – bear the burden to establish lack of relevance.[30] To that end, the Court finds the relevancy of Request 9 is readily apparent on its face. Again, Plaintiffs' performance is – at least in part – evaluated on customer sales. Thus, a request seeking information relating to customers, accounts, sales routes, and the employees who service those accounts in the Kansas City region is relevant to Plaintiffs' claims that Defendants treated Plaintiff differently in assignment of customers, accounts and sales routes in the Kansas City region.

Defendant next contends this request is facially overly broad because it uses the omnibus term "concerning." Defendant correctly observes that this Court has held on several occasions that a document request may be overly broad on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning."[31] That rule, however, applies only when the omnibus term is used with respect to a general category or broad range of documents.[32]

As this Court has previously noted, a request may be overly broad on its face "if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may

_____

[30]*Owens*, 221 F.R.D. at 652 (citation omitted).

[31] *Cardenas v. Dorel Juvenile Group, Inc.,* 232 F.R.D. 377, 382 (D. Kan. 2005) (*citing Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 667 (D. Kan. 2004); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003); *Employers Commercial Union Ins. Co. of America v. Browning-Ferris Employers Commercial*, No. 91-2161-JWL, 1993 WL 210012, at *3 (D. Kan. Apr. 5, 1993)).

[32]*Id.* (citing *Sonnino*, 221 F.R.D. at 667-68; *Aikens*, 217 F.R.D. at 538).

conceivably fall within its scope."[33] A request seeking documents "pertaining to" or "concerning" a broad range of items "requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request."[34] When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face.[35]

Applying these standards, the Court finds that Request 9 is not so all-encompassing as to make it overly broad on its face. The omnibus term "concerning" modifies procedures or criteria used to assign sales representatives and sales managers to customers, accounts, sales routes, sales territories, and/or customer business teams.  The term does not modify a large number or general category of things or events. Thus, the request is not objectionable on this basis.

---

[33]*Id.* (citing *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ. A. 94-2395-GTV, 1995 WL 625962, at *6 (D. Kan. Oct. 5, 1995)).

[34]*Id.*

[35]*Id.* (citing *Sonnino*, 221 F.R.D. at 667-68). For example, this Court has held a request overbroad and unduly burdensome on its face where it sought all documents "regarding" or "relating to" the lawsuit and the eleven plaintiffs and their EEOC charges. See *Aikens*, 217 F.R.D. at 538. This Court also held a request in a breach of contract suit overly broad on its face where it sought documents that referred or related to any alleged or actual breaches of the contract at issue, the plaintiff's reasons for breaching the contract, and communications between the defendant and any other person regarding termination of the contract. *See Western Resources v. Union Pacific R. Co.*, No. 00-2043-CM, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001). Similarly, this Court held a request facially overbroad where it requested "all documents concerning plaintiff." *See Pulsecard, Inc. v. Discover Card Servs.*, No. 94-2304-EEO, 1996 WL 397567, at *6 (D. Kan. July 11, 1996).

**Request 10**:  All documents, databases and files concerning or pertaining to all applicants and/or candidates for promotion and/or transfer within the Kraft Sales Organization during the Relevant Time Period, or containing information that shows the identity or the number of such applicants and candidates, their race, the position for which they applied or expressed interest, whether they were promoted and/or transferred and, if so, when, where, and to what position they were promoted and/or transferred and the overall number of such applicants and candidates by race promoted and/or transferred for each position.

Defendants object to this request on grounds of relevancy.  In support of this objection, Defendants again state only that Plaintiffs have failed to meet their burden to establish relevancy. The Court, however, finds the relevancy of Request 10 is readily apparent. Plaintiffs seek to obtain documents relating to Kraft's promotion of employees. This information appears relevant to Plaintiffs' unequal treatment and failure to promote claims. Defendants' objection will be overruled.

**Request 11**:  All documents relating to "Succession Planning" or "Advancement Planning" applicable to the Kraft Sales Organization in the Kansas City region during the Relevant Time Period, including documents that explain the purpose and/or use of Advancement Planning, documents that explain the Advancement Planning process, and all documents generated in connection with Advancement Planning, including but not limited to schedules, written agendas, notes and/or minutes of meetings, and writings reflecting actual assignments made, including documents identifying by name and race employees affected by and assignments made as a result of Advancement Planning.

Defendants object to this request on grounds of relevancy, again stating that Plaintiffs failed to meet their burden to establish relevancy.  The Court, however, finds the relevancy of Request 11 is readily apparent. Plaintiffs are attempting to obtain documents relating to Defendant's promotion of sales representatives and sales managers.  This information appears relevant to Plaintiffs' failure to promote and unequal treatment claims, as it relates to how Defendant approached and treated the promotion process of employees. Defendants' objection will be overruled.

**Request 12**:  All documents concerning or pertaining to any procedures or criteria used by the Kraft Sales Organization in the Kansas City region during the Relevant Time Period to select employees to participate in any training, leadership or career development program maintained, funded or sponsored by, Kraft.

**Request 13**:  All documents identifying the name and race of all employees in the Kraft Sales Organization in the Kansas City region who have participated in any training, leadership or career development program maintained, funded or sponsored by, Kraft during the Relevant Time Period, including the date of each person's participation in the program; whether he or she successfully completed the program; and for those who did successfully complete the program, whether, when and to what position they were promoted after their successful completion of the program.

**Request 14:**  All documents reflecting applicant flow and/or selection rates for any and all training, leadership or career development programs maintained, funded or sponsored by, Kraft during the Relevant Time Period with respect to the Kraft Sales Organization in the Kansas City region.

**Request 15**:  All documents concerning or pertaining to all employees demoted within the Kraft Sales Organization in the Kansas City region during the Relevant Time Period, or containing information that shows the identity or the number of demoted employees, their race, the date of demotion, the position held prior to demotion, the reason for the demotion, and the identity, race, qualifications and employment history of every person hired or assigned to replace the demoted employee and/or perform the demoted employee's former job duties.

Defendants object to all four of these requests on grounds that responsive information for employees other than Plaintiffs is not relevant.  The Court disagrees and finds the relevancy of these requests are apparent on their face.  The information requested appears relevant to Plaintiffs' claims of unequal treatment, failure to promote, and a pattern and practice of discriminatory conduct in terms of sales routes assigned, promotions, demotions and performance reviews. Thus, Defendants' relevancy objections to these requests will be overruled.

**Request 17**:  17. All documents describing or reflecting the quarterly and annual gross sales and net profit of the Kraft Sales Organization in the Kansas City region during the Relevant Time Period, broken down by each customer, account, sales route, sales territory and customer business team.

Defendant claims the documents requested here are not relevant.  The Court, however, finds this information is relevant on its face due to the relationship between job performance, promotions, demotions, salaries (upon which Plaintiffs base their claim of discrimination) and sales.

**Request 19**: All documents concerning or pertaining to any analyses of adverse impact, job-relatedness or validity of any procedures used by Kraft to select African-Americans for assignment or promotion within the Kraft Sales Organization in the Kansas City region during the relevant time period.

Although the objection to Request 19 was briefed in the relevancy section of the parties' pleadings, Defendants objection to Request 19 is that the term "job-relatedness" is vague and ambiguous. The Court agrees.  With that said, however, Defendants have a duty under the federal rules to respond to the extent that discovery requests are not objectionable.[36]  Thus, the Court will require Defendants to respond by omitting the phrase "job-relatedness" from the request.

**Request 20:**  All documents relating to any affirmative action, equal employment opportunity and/or diversity policies, statements, guidelines, practices, plans, reports or proposals concerning African-Americans with respect to the Kraft Sales Organization during the Relevant Time Period.

**Request 21:**  Any written review or report of the accomplishment of or failure to accomplish general, specific or numerical goals of affirmative action, equal employment opportunity and/or diversity policies, statements, guidelines, practices, plans, reports or proposals, with respect to African-Americans in the Kraft Sales Organization during the Relevant Time Period.

**Request 22:**  All studies, memoranda, reports or other documents related to the assessment and/or analysis of the representation of African-Americans in positions within the Kraft Sales Organization during the Relevant Time Period.

Defendants object to these three requests on grounds of relevancy, arguing that nationwide "affirmative action, equal employment opportunity and/or diversity policies, statements, guidelines, practices, plans, reports or proposals" documents for the entire company is not relevant to claims

---

[36] Fed. R. Civ. P. 34(b).

21

limited in geographic scope to the Kansas City region. Given Defendants' objections, and the Court's finding, *supra*, that the Kansas City region is a reasonable geographic scope in this lawsuit, the Court will sustain Defendants' objection to the extent that Defendants shall be required to provide information relating to affirmative action, equal employment opportunity and/or diversity policies, statements, guidelines, practices, plans, reports, or proposals concerning African-Americans and applicable to sales representatives and sales managers in the Kansas City region only.

> **Request 23:**   All documents concerning or pertaining to internal complaints or charges by African-American employees in the Kraft Sales Organization in the Kansas City region during the Relevant Time Period, including Plaintiffs, alleging discrimination by Kraft on the basis of race and/or retaliation for complaining of employment discrimination on the basis of race, including Kraft's investigation, findings, responses and actions taken with regard to such complaints or charges.

> **Request 24:**   All civil complaints, Equal Employment Opportunity Commission charges, and state fair employment agency charges filed by African-American employees in the Kraft Sales Organization in the Kansas City region during the Relevant Time Period alleging discrimination by Kraft on the basis of race and/or retaliation for complaining of employment discrimination on the basis of race, and Kraft's response thereto.

Defendants claim the documents sought in these two requests are not relevant because not all individuals who lodged and/or filed complaints are similarly situated with Plaintiffs. The Court disagrees and finds the relevancy of these requests are apparent on their face. The Court further finds that limiting the geographic and organizational scope of these requests to sales representatives and sales managers in the Kansas City region sufficiently narrows the requests to those employees who are similarly situated to Plaintiffs.

> **Request 25:**   All documents which pertain or refer to the Plaintiffs, including personnel files, correspondence or memoranda within Kraft or between Kraft and outside parties.

**Request 31:** All documents concerning Mr. Bradshaw's job assignment at Kraft during the Relevant Time Period, including all documents concerning the name/identity and size or sales volume of all customers, accounts or sales routes to which Kraft assigned Mr. Bradshaw.

**Request 32:** All documents concerning Mr. Bradshaw's job performance at Kraft during the Relevant Time Period, including all performance reviews, awards or discipline issued to Mr. Bradshaw.

**Request 33:** All documents concerning Kraft's consideration of Mr. Bradshaw for promotion at Kraft during the Relevant Time Period, including all "Succession Planning" or "Advancement Planning" documents that refer to Mr. Bradshaw.

**Request 34:** All documents concerning Mr. Bradshaw's compensation at Kraft during the Relevant Time Period.

**Request 35:** All documents concerning Mr. Adams' job assignment at Kraft during the Relevant Time Period, including all documents concerning the name/identity and size or sales volume of all customers, accounts or sales routes to which Kraft assigned Mr. Adams.

**Request 36:** All documents concerning Mr. Adams' job performance at Kraft during the Relevant Time Period, including all performance reviews, awards or discipline issued to Mr. Adams.

**Request 38:** All documents concerning Mr. Adams' compensation at Kraft during the Relevant Time Period.

**Request 39:** All documents concerning Ms. Raines' job assignment at Kraft during the Relevant Time Period, including all documents concerning the name/identity and size or sales volume of all customers, accounts or sales routes to which Kraft assigned Ms. Raines.

**Request 40:** All documents concerning Ms. Raines' job performance at Kraft during the Relevant Time Period, including all performance reviews, awards or discipline issued to Ms. Raines.

**Request 42:** All documents concerning Ms. Raines' compensation at Kraft during the Relevant Time Period.

Although Defendants objected to the omnibus phrases (e.g., "concerning" and "pertaining")

utilized in Requests 25, 31, 32, 33, 34, 35, 36, 38, 39, 40 and 42 as set forth above, Defendants have

23

communicated to Plaintiffs and the Court that they have not withheld production of responsive documents based on these objections.   Accordingly, the Court finds the Motion to Compel moot with respect to these particular requests.

> **Request 26:** 26. All documents showing the hire date, job title(s), job assignment(s), performance review, promotion, discipline and/or compensation for each of the following individuals during their employment at Kraft: Mike Bokarae, Bryce Brunton, Melinda Campbell, Julie Casto, Larry Crader, Shirley Erlbacher, Scott Evans, Ken Godat, Jim Etzkorn, Ken Godat, Aimee Goodman, Frank Hopfinger, Jon Meyer, Tim Meyers, Douglas Moon, Gerald Moore, Mark Morin, Jeffrey Newey, Judy O'Laughlin, Kevin Post, Andy Riggs, Dan Rouen, Mike Schmidt, Jena Sowers (formerly, Epperson), Ryan Terry and Mark Wirtz.

Defendants claim the documents sought in Request 26 are not relevant because not all the employees designated in the request are similarly situated with Plaintiffs. Based on the Court's finding, *supra*, that limits the geographic and organizational scope of these requests to sales representatives and sales managers in the Kansas City region, the Court finds the request is relevant and reasonably tailored to employees who are similarly situated to Plaintiffs.

> **Request 27:** With respect to all employees in the Kansas City region promoted from the position of Sales Representative to a higher/more senior position within the Kraft Sales Organization during the Relevant Time Period, all documents showing the hire date, job title(s), job assignment(s), performance reviews, promotion, discipline and compensation for each such employee.

> **Request 28:** With respect to all employees in the Kansas City region promoted from Kraft Salary Grade 6 to a higher Salary Grade within the Kraft Sales Organization during the Relevant Time Period, all documents showing the hire date, job title(s), job assignment(s), performance reviews, promotion, discipline and compensation for each such employee.

Defendants state they limited their production of documents in response to Requests 27 and 28 to the five years preceding the Amended Complaint (April 2001), but otherwise responded to these two requests and did not withhold any documents pursuant to any objection other their objection to temporal scope.

24

Based on the Court's finding, *supra*, that information for the two-year, four-month period before the April 2002 liability period may be relevant to demonstrate the pattern and practice of discrimination alleged by Plaintiffs, Defendants objection on these grounds is overruled. And, because Defendants state they have not withheld production of responsive documents based on any other objection, the Court finds the Motion to Compel moot with respect to any other objection.

> **Request 29:**   All documents concerning all employees in the Kraft Sales Organization in the Kansas City region disciplined and/or placed on an Action Plan or Performance Improvement Plan ("PIP") during the Relevant Time Period, including but not limited to, the disciplinary and personnel files of all such employees.

Defendant claims Request 29 is not reasonably calculated to lead to admissible evidence, because the request is not limited to similarly situated employees, but extends to every employee in the sales organization in the Kansas City region from 1999. Based on the Court's finding, *supra*, that limits the geographic and organizational scope of these requests to sales representatives and sales managers in the Kansas City region, the Court finds a request for Disciplinary, Action Plan and Performance Improvement Plan documents is relevant and reasonably tailored to those employees who are similarly situated to Plaintiffs.

## F.   Sanctions

Federal Rule of Civil Procedure 37(a)(4) governs the imposition of sanctions in connection with motions to compel. Subsection (a)(4)(A) provides that when a motion to compel is granted, "the court shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the court finds that . . . the opposing party's . . . response or objection was substantially justified, or

that other circumstances make an award of expenses unjust."

With minor exception, the Court has granted Plaintiffs' Motion to Compel in its entirety. Thus, the Court finds that an award of sanctions pursuant to Rule 34(a)(4)(A) may be appropriate here. Before the Court may make any such award, however, the non-moving party must be afforded the "opportunity to be heard." An actual hearing is not necessary, however, and the Court may consider the issue of sanctions "on written submissions." The "written submission" requirement is met where the moving party requests sanctions in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response.

Here, Plaintiffs did not request sanctions in their motion. Consequently, Defendants have not been given sufficient "opportunity to be heard." To satisfy the "written submissions" rule, the Court will direct Defendants and/or their counsel to show cause, in writing, on or before November 30, 2006, why the Court should not require either or both of them to pay the reasonable expenses and attorney fees incurred by Plaintiffs in making the Motion to Compel. Plaintiffs shall have until December 14, 2006 to file a response thereto, if they so choose. In the event the Court determines that sanctions should be imposed, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of fees and expenses that Plaintiffs incurred, and for the filing of any related briefs.

**G.     Conclusion**

Based on the discussion above, Plaintiffs' Motion to Compel is granted in part and denied in part as specifically set forth below:

1.      Defendants' "general objections" are **waived** and no later than **November 27, 2006**, Defendant shall respond to each request for production without consideration of their purported "general objections";

2.      Defendants' objections to the temporal scope of the requests are **overruled** and no later than **November 27, 2006**, Defendants shall supplement their responses using the time period of January 1, 1999 to present;

3.      Defendants' objections to the organizational scope of the requests, as subsequently revised and limited by Plaintiffs to include only sales representatives and sales managers, are **overruled** and no later than **November 27, 2006** Defendants shall supplement their responses accordingly;

4.      Defendants' objections to the geographic scope of the requests are **overruled** and no later than **November 27, 2006**, Defendants shall supplement their responses to include responsive documents for the Kansas City region;

5.      Defendants' objections to Plaintiffs Raines, Bradshaw and Adams' requests as duplicative of requests previously propounded by Plaintiff Johnson are **overruled** and no later than **November 27, 2006**, Defendants shall respond to the referenced requests;

6.      Defendants' objections on grounds of vagueness and ambiguity are **overruled** and no later than **November 27, 2006**, Defendants shall respond to the referenced requests without consideration of this objection;

7.      Defendants' relevancy objection to Request 1, as subsequently revised by the Court to include the contents of electronic databases that contain personnel-related data (e.g., salary, race, gender, promotions, etc.) concerning the Kraft Sales Organization in the Kansas City Region, is **overruled** and no later than **November 27, 2006**, Defendants shall respond to this request accordingly;

8.      Defendants' relevancy objections to Requests 7-17, 23-24 and 29 are **overruled** and no later than **November 27, 2006**, Defendants shall respond to these requests accordingly;

9.    Defendants' objection to Request 19 based on vagueness and ambiguity is **sustained** to the extent that Defendants shall not be required to respond to the "job-relatedness" portion of the request.  Defendants' objections to Request 19 on any other grounds are **overruled** and no later than **November 27, 2006**, Defendants shall respond to this request accordingly;

10.   Defendants' relevancy objections to Requests 20, 21, and 22 are **sustained** to the extent no later than **November 27, 2006**, Defendants shall respond to these requests by providing information relating to affirmative action, equal employment opportunity and/or diversity policies, statements, guidelines, practices, plans, reports, or proposals concerning African-Americans and applicable to sales representatives and sales managers in the Kansas City region;

11.   Defendants' relevancy objections to Requests 25-28, 31-36, 38-40 and 42 are deemed moot on grounds that Defendants maintain they have not withheld production of responsive documents based on the relevancy objections lodged; and

12.   Defendants and/or their counsel shall show cause, in writing, on or before **November 30, 2006**, why the Court should not require either or both of them to pay the reasonable expenses and attorney fees incurred by Plaintiffs in making the Motion to Compel.  Plaintiffs shall have until **December 14, 2006** to file a response thereto, if they so choose.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 14th day of November, 2006.


s/ David J. Waxse
David J. Waxse
United States Magistrate Judge


cc:    All counsel and *pro se* parties